### KENNEDY v. UNITED STATES.
### No. 9614.

Circuit Court of Appeals, Ninth Circuit.
April 19, 1941.

See, also, 115 F.2d 624.

D. V. Mulhern and B. H. Gibbs, both of Phoenix, Ariz., for appellant.

Norman M. Littell, Asst. Atty. Gen., Frank E. Flynn, U. S. Atty., of Phoenix, Ariz., and John P. Dougherty, Asst. U. S. Atty., of Tucson, Ariz., and Charles R. Denny and Frank J. Dugan, Attys., Department of Justice, both of Washington, D. C., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

In this action it was ordered, adjudged and decreed by the District Court "That defendant be and hereby is enjoined and restrained from occupying and grazing livestock on land embraced within" a certain designated survey township in the State of Arizona.

The defendant below appeals upon two grounds. One of the grounds of appeal is that the court was and is without jurisdiction because, as he asserts, the issue of the case lies solely within the jurisdiction of the Land Department of the Federal Government, and cites Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659, as authority. We do not consider that the cited case pronounces such doctrine, and we are convinced that the appellant is wrong in his contention.

In the Cameron case it was held that an issue as to whether or not land of the public domain was mineral, tried before the Land Department and held to be nonmineral, was not to be relitigated in an action brought by the Government to oust the claimant from possession of the land. This case, however, supports the jurisdiction of the District Court in entertaining a case to enjoin the occupancy of public land sought to be used by the Government for purposes of its own. In our case, as will presently be seen, the Government's proposed use of the land was to include it in a Grazing District under the Taylor Grazing Act, 43 U.S.C.A. § 315. The Government considered Kennedy as a mere trespasser, and appellant sought unsuccessfully to establish that he was more than a trespasser because of some right as a settlor upon the lands, the subject matter of the action. We think Judge Bourquin put the matter well and as succinctly as we could do it in the case of United States v. Schultz, D.C.Cal. 1929, 31 F.2d 764: "The courts are always open to private litigants to determine possessory rights in public land. Gauthier v. Morrison, 232 U.S. [452] 461, 34 S.Ct. 384, 58 L.Ed. 680. Not to determine title, however, because they have not title. But the United States having title, the tribunals are always open to it to vindicate its rights therein, either that of the Land Department or that of the courts, at its election if proceedings are initiated by it. See United States v. Sherman [8 Cir.] 288 F. 497."

The other ground of appeal is that by the findings of fact the judgment should have gone against the plaintiff.

On December 1, 1931, defendant-appellant Kennedy erected a tin house, dug a well and marked the boundaries of 640 acres of vacant unappropriated public land of the United States, all of which was open to entry under the stock-raising homestead laws and all of which he believed was unsurveyed land, but a portion of which in fact was surveyed land.

From the findings of fact there is no direct statement as to the purpose or intention of Kennedy in going upon the land. However, since there is mention in the findings of the stock-raising homestead act and the parties in their briefs and oral argument assume that Kennedy had such a homestead in mind when he entered upon the land and made his small improvements, we shall proceed upon the same premise.

Kennedy is a World War veteran and is entitled to 18 months deduction from the time required to get a patent upon homestead land. 43 U.S.C.A. § 272. This fact will be referred to later more particularly.

Kennedy lived in the tin house about three months in the year following December 1st, 1931, the date of first occupancy, "and returned thereto to remain for short intervals * * *" and "between December, 1931 and April, 1937, he resided on the land 2 or 3 months out of each year in periods of various lengths, the total residence amounting to approximately 35 months up

to December, 1939". (The trial was had November 28th, 1939.) Kennedy has never filed with any Land Office or any land official of the Government any notice or statement of any kind relating to his settling upon or entering the land.

As above stated, it turned out that a portion of the 640 acres was surveyed, and this portion in some manner, not questioned by Kennedy, passed to the ownership of the State of Arizona in the year 1934. But the whole tract of 640 acres was open for stock-raising homestead entry when Kennedy settled upon it and remained so until some time in 1934. By Executive Order of November 26th, 1934, the unsurveyed portion of the tract was withdrawn from homestead entry and was included in the establishment (if Kennedy had no right to it) of a Grazing District under the provisions of the Taylor Grazing Act, 43 U.S. C.A. § 315. In January, 1935, Kennedy moved his house to the unsurveyed portion, started to drill another well thereon and resided there "at intervals".

■ Since the whole 640-acre tract settled upon was open to homestead when Kennedy marked its boundaries and made the improvements noted and up to the time of its withdrawal·from settlement, we have no doubt that any right accruing to him during such period continued over and to the same extent, to the unsurveyed portion after the surveyed portion had been acquired by the State of Arizona.

■ The general homestead law is found in 43 U.S.C.A. § 161 et seq., § 291, providing particularly for stock-raising homesteads, and § 164 covering in detail the requisites of a completed homestead, among such being a residence of three years upon the land. But the law does not require that an entryman remain constantly upon the land for the required period, for by 43 U.S.C.A. § 231 and § 232 (the latter covering unsurveyed land) it is provided that the entryman shall be entitled to leave of absence after filing notice thereof in the local land office, in one or two continuous periods not exceeding in the aggregate, five months in each year after establishing residence.

We have seen by the findings that in no year has Kennedy resided upon the land more than three months and it may be noted, though not necessary to the decision, that he never made application for absence from the land.

Under the findings it is possible, though not specifically found, that Kennedy was on the land for the full required seven months of a year subsequent to April, 1937, the date to which the court found Kennedy had been on the land two or three months per year. Unless some other facts intervene, however, this does not help him because long before such date, to-wit, November 26, 1934, the right to initiate a claim to the land by homestead had been shut off by the withdrawal of the land from entry. In other words, the withdrawal of the land from homestead entry was effective during a part of the period in which the residence was too meager to keep the entry alive, and once the entry right had expired it was too late to initiate another.

Appellant contends, however, that the proper application of his war service deduction credit has prevented the lapse of his entry right. But section 272 of 43 U.S. C.A. also provides that notwithstanding this credit, the serviceman must actually reside upon the land for a year of his entry,[1] the applicable portion of this section being, "The time which the homestead settler has served in the [armed forces] shall be deducted from the time otherwise required to perfect title, * * * but no patent shall issue to any homestead settler who has not resided upon, improved, and cultivated [grazed] his homestead for a period of at least one year after he shall have commenced his improvements."[2]

---

[1] However, by Circular 541, Jan. 16, 1922, 48 L.D. 389, the Department of the Interior [§ 28(b)] construed this section of the Code to be subject to the five months vacation from actual residence on the land as is enjoyed by other entrymen.

[2] Section (c) of the above Circular provides, "* * A Soldier * * with more than 12 and less than 19 (months) (service which may be credited) * * must reside on the land 7 months during the first year and such part of the second year as, added to his excess over 12 months' service, will equal 7 months, * * *. Where the entry is made under the stock-raising provisions of the homestead law, the above rule with respect to residence will be applicable, but the soldier must make the improvements on the land required of other persons under that law, and show in lieu of cultivation that he actually used the land for raising stock and forage crops during the period that he was required to reside on the land. * * *"

Since the service deduction cannot supplant the necessity of residence for one year of his period of settlement, it is obvious from the finding of fact as to Kennedy's residence that his service deduction right does not and cannot act to keep his entry rights alive up to the moment of the order of withdrawal from homestead entry. After that date neither Kennedy's presence on the land nor his soldier deduction right could give him any right to possession of the land. It is not contended by Kennedy that he bases his claimed right to possession of the land under any provision of the Taylor Grazing Act.

It follows that this appeal must fail and therefore we do not treat the other phases of the case which would throw great doubt upon the right of appellant to prevail.

Affirmed.