**UNITED STATES of America,**
**Appellant,**

v.

**Edison R. NOGUEIRA et al., Appellee.**

**No. 21754.**

United States Court of Appeals
Ninth Circuit.

Nov. 4, 1968.

---

Roger P. Marquis (argued), Lands Div., Dept. of Justice, Edwin L. Weisl, Jr., Clyde O. Martz, Asst. Attys. Gen., Washington, D. C., Wm. M. Byrne, U. S. Atty., Ernestine Tolin, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Milton Wichner (argued), Hollywood, Cal., for appellee.

Before ELY and CARTER, Circuit Judges, and BELLONI,* District Judge.

JAMES M. CARTER, Circuit Judge.

This is an appeal from a summary judgment dismissing a complaint filed by the United States, seeking to eject appellees, and to recover damages because of an alleged trespass upon land and occupancy of a residence by appellees, in the Cleveland National Forest.

---

* Hon. ROBERT C. BELLONI, United States District Judge, District of Oregon, sitting by designation.

The dismissal was on grounds of lack of jurisdiction, in that the validity of a mining claim under which appellees claimed rights, must first be adjudicated by the Department of the Interior. This appeal followed.

## THE QUESTION PRESENTED

The question presented is whether the district court lacked jurisdiction of a suit by the United States, for ejectment, and to recover trespass damages, prior to the determination of the validity of a mining claim filed on the property of the United States.

## THE FACTS

The Grape Vine Placer Mining Claim was located in 1903 and 1945, on lands of the United States, now within the Cleveland National Forest. An application for a patent, filed by the widow of the original locator, was rejected by the Interior Department on February 29, 1960, on the ground that the material involved, shale, was a common clay not subject to location under the mining laws.

On May 1, 1961, the widow executed a quitclaim deed to her son, Robert Mattey, conveying the lot known as Grape Vine Placer Mining Claim. On May 8, 1961, the mining claim was leased to Maria Nogueira with an option to purchase. Robert Mattey thereafter on May 18, 1961, filed for recording a placer location purportedly for fire clay on the same property. Minor excavation took place on the property in 1961.[1] There was no substantial proof of mining on the property since that date. Instead, the Nogueiras have used the land as a residence.[2] At the very least, a question of fact was presented.

On October 30, 1962, the Forest Service requested removal of the Nogueiras by January 30, 1963. Robert Mattey on March 16, 1964, executed a quitclaim deed to the mining claim to Maria Nogueira. Suit against the Nogueiras on their refusal to move was instituted on February 10, 1965. A hearing was held, and on February 21, 1966, the district court stated that the case was not ripe for action by the court because the Department of Interior had not held the 1961 claim to be invalid and that such an adjudication was a preliminary prerequisite to jurisdiction by the district court.

The district court invited a motion for summary judgment by the appellees and on the hearing of the motion, relying on Best v. Humboldt Placer Mining Co., 371 U.S. 334, 83 S.Ct. 379, 9 L.Ed. 2d 350 (1963), granted the motion for summary judgment on behalf of the appellees.

The district court signed and filed findings of fact and conclusions of law, wherein it found that since the location of the last claim by Mattey on May 1, 1961, and its filing on May 18, 1961, "no proceedings have been instituted by or before the Bureau of Land Management and the Department of the In-

1. The claim was purportedly located on May 1, with date of discovery May 6, 1961. Robert Mattey stated he had known for years and years where the fire clay was located and that in 1961 he removed 7 or 8 cubic feet of material and later removed a few tons. He also stated that the $200 work on the location notice included the labor.

2. There was ample evidence in the record that the Nogueiras were claiming and using the Grape Vine Placer as a residence. Maria Nogueira stated she met Mattey because "We was [sic] looking for a place to live close to the Corona area." Maria filed an application for 5 acres of the Grape Vine Placer under the Act of October 23, 1962, Pub.L. 87–851, 76 Stat. 1127, 30 U.S.C. 701–709. That application stated that major improvements were completed in 1949–51 and that "[m]ajor remodeling and some additions to the residence were completed in 1961, 1962 . . . The said claim was the permanent home of Alice A. Mattey's husband and the father of Robert A. Mattey and it was the vacation home of Robert A. Mattey. It was on October 23, 1962 the permanent home of the claimant herein." Maria's application was rejected on the ground that it failed to qualify under the 1962 statute above.

terior to contest the said Grape Vine Placer Mining Company, or to otherwise attack its validity. * * * That the valuable mineral which was claimed to have been discovered on said mining claim was an uncommon variety of clay known as fire clay. That defendants are in the position of and occupying the Grape Vine Placer Mining Claim as successors in interest to Robert A. Mattey, who located the said mining claim on May 1, 1961." The court concluded that it had no jurisdiction to determine the rights of appellees to occupy the claim unless and until the validity of the mining claim had been finally determined by the Department of the Interior, after hearings held in accordance with the provision of the Administrative Procedure Act; and that unless and until said mining claim has been finally adjudged to be invalid, appellees and each of them were lawfully and properly in possession of and occupancy of the claim, and entitled to be free from obstruction, resistance and interference of the United States, its agents, officers and employees.

The judgment entered by the court further ordered "that the answer and counterclaim of defendants, and the motion of defendants for leave to amend answer to include the Fourth Affirmative Defense and counterclaim be dismissed without prejudice." Hence, we are not concerned in this appeal with the alleged rights asserted by defendants in their answer and counterclaim based on the Act of October 23, 1962, Pub.L. 87–851, 76 Stat. 1127, 30 U.S.C., §§ 701–709; [3] nor is any issue here presented as to the proposed Fourth Affirmative Defense attacking the Interior Department's decision of 1960 holding the original Mattey claim invalid.

### CONTENTIONS OF THE GOVERNMENT

The United States in urging that the district court had jurisdiction of the action, presents three independent contentions:

(1) That this court in Kennedy v. United States, 119 F.2d 564 (9 Cir. 1941), sustained the right of the United States to secure an adjudication of its right to possession of the public domain and in that connection to adjudge a stock raising homestead entry to be invalid; that the same result has been and should be reached in mining claims, and that Best, supra, does not hold otherwise.

(2) That under Section 4(a) of the Act of July 23, 1955, 69 Stat. 368, 30 U.S.C. § 612, which provides:

"* * * Any mining claim hereafter located under the mining laws of the United States shall not be used, prior to issuance of patent therefor, for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto. * * *"

a mining claim not filed and occupied for the bona fide purpose and intention of developing a profitable mine is void, and consequently no defense to a trespass action by the United States.

(3) That even if the 1961 mining claim was valid, it would justify occupation of the public land only for mining purposes, as provided in Section 4 of the Act of July 23, 1955, 69 Stat. 368, 30 U.S.C. § 612 set forth above; that occupation of a mining claim only for a permanent residence is clearly illegal; and that relief prohibiting continuation of such illegal action and damages for such a trespass cannot properly be denied.

3. The statute cited permitted the Secretary of the Interior to convey to a qualified occupant an area up to five acres, when (1) the mining claim has been determined by the Secretary to be invalid, or (2) when the occupant, after notice from the United States that the claim is believed to be invalid, relinquishes to the United States all right to such claim under the mining laws. See Funderberg v. Udall, 396 F.2d 638 (9 Cir. 1968). In the case at bar the appellees of course are contending that the mining claim was valid.

If the government is right in any one of its three contentions, then it was error to hold that the court had no jurisdiction and to grant a summary judgment; and the judgment must be reversed.

## I.

### Did the District Court have jurisdiction to adjudicate the validity of the mining claim?

The government first contends that the district court had jurisdiction to determine the validity of the mining claim in connection with an adjudication of the government's right to possession. We first examine Best v. Humboldt Placer Mining Co., supra, in depth because it was reliance on *Best* which led the district court to deny the government *any* relief and to grant the summary judgment for supposed lack of jurisdiction.

*Best* was a case in which the United States sued in the district court to condemn outstanding mining claims on certain public lands needed for the construction of a dam. The government sought immediate possession to the land. The district court allowed the United States a writ of possession; but no other issues in the action were determined.

The complaint asked that the United States be allowed to reserve authority to have the validity of any mining claims determined in administrative proceedings before the Bureau of Land Management. After being granted a writ of possession, the Government instituted administrative proceedings for a determination as to the validity of the un-

patented mining claims on the condemned land.

The holders of the claims, in a separate action in the district court sought to enjoin the administrative proceedings, but the injunction was denied. The Court of Appeals reversed, concluding that since the United States went into the District Court to condemn the land and to get immediate possession pursuant to F.R.Civ.P. 71A, the validity of the mining claims were, of necessity, left to judicial determination.

The Supreme Court reversed the Court of Appeals stating (371 U.S. at 340, 83 S.Ct. at 384):

"The United States is not foreclosed from insisting on resort to the administrative proceedings for a determination of the validity of those claims. It may take property pursuant to its power of eminent domain, either by entering into physical possession of the property without a court order, or by instituting condemnation proceedings * * *. Institution of suit is one way to obtain immediate possession; and we see nothing incompatible between the use of that means to obtain possession and the use of the administrative proceedings to determine title. * * *

We conclude that the institution of the suit in the District Court was an appropriate way of obtaining immediate possession, that it was not inconsistent with the administrative remedy for determining the validity of the mining claims, and that the District Court acted properly in holding its hand until the issue of the validity of the claims has been resolved by the agency entrusted by Congress with the task." [4]

4. The Court in its opinion stated "If a patent has not issued, controversies over the claims 'should be solved by appeal to the land department and not to the courts.' Brown v. Hitchcock, 173 U.S. 473, 477 [19 S.Ct. 485, 43 L.Ed. 772]. And see Northern Pacific R. Co. v. McComas, 250 U.S. 387, 392 [39 S.Ct. 546, 63 L.Ed. 1049].

The Court of Appeals wrote nothing in derogation of these principles." (p. 338, page 383 of 83 S.Ct.).

As shown hereafter in this opinion, where *Brown* and *Northern Pacific* are discussed, the reference by the Court was to private litigants seeking to restrain proceedings by the Land Department as the private litigants had sought to do in *Best* in the trial court.

■■ The statement in the last paragraph of *Best,* supra, "* * * that the District Court acted properly in holding its hand until the issue of the validity of the claims has been resolved by the agency entrusted by Congress with the task" is troublesome. It would on its face appear that the district court was acting on some theory of the doctrine of abstention. Actually there is nothing to indicate the district court was "holding its hand." The district court in the condemnation action, allowed the United States possession but no other issues in that action were determined. *Best,* page 335, 83 S.Ct. 379. The United States instituted the contest proceedings. There is no indication that any other relief was requested from the district court in the condemnation action. We think the holding of the *Best* case is that the United States might resort to administrative proceedings for the determination of the claims, even though it had taken physical possession of the property in the condemnation proceedings, and that there was nothing inconsistent between the two separate actions of the United States. We think any intimation that the doctrine of abstention was involved is incorrect.[5]

The appellees spin an intricate argument to the effect that the Congress has given to the Department of the Interior primary authority for the administration and disposition of mining claims on public lands, and draw the conclusion that a district court has no jurisdiction of any kind in a case such as the one at bar. The appellees quote from the government's brief, filed in Best v. Humboldt, supra, which cites various Supreme Court cases.

An analysis of the cases contained in the government's brief in the Supreme Court in Best v. Humboldt, and incorporated as part of appellees' argument here, shows the error of the appellees and their failure to properly read the cases. Generally they were cases where a *private litigant* went to the courts to compel decision by the government agency, to restrain the government agency, or to in some way affect the proceeding on the claim then pending before the government agency.

Brown v. Hitchcock, 173 U.S. 473, 19 S.Ct. 485, 43 L.Ed. 772 (1899), was a case in which the plaintiff sued the Secretary of the Interior, seeking a decree cancelling an order of the Land Department and restraining the officers of the Land Department from carrying its order into effect. The appeal and complaint were dismissed on demurrer, the decision was affirmed by the Court of Appeals of the District of Columbia and the Supreme Court affirmed. The court relied on United States v. Schurz, 102 U.S. 378, 396, 26 L.Ed. 167 (1880), to the effect that "* * * the courts would not interfere to control the exercise of the power thus vested in that tribunal," (the Land Office).

United States ex rel. Riverside Oil Company v. Hitchcock, 190 U.S. 316, 23 S.Ct. 698, 47 L.Ed. 1074 (1903), was an action in which the plaintiff sought a writ of mandate to compel the Secretary of the Interior to vacate an order rejecting selections of land and to order a patent issued. The Supreme Court of the District of Columbia, in which the petition was filed, dismissed the same and the Supreme Court affirmed. The gist of the decision was that Congress had selected the Land Department, a special tribunal with judicial functions, to execute the laws regulating the purchase, selling and care and disposition of the public lands. The court said, page 324, page 701 of 23 S.Ct.: "Neither an injunction nor mandamus will

---

5. Appellees argue that on the basis of the doctrine of abstention, the court had discretion to refuse to exercise its jurisdiction. The district court should abstain only in narrowly limited "special circumstances." Propper v. Clark, 337 U.S. 472, 492, 69 S.Ct. 1333, 93 L.Ed. 1480 (1949). This is not a proper case for the exercise of the doctrine of abstention. Moreover, the district court's dismissal was based upon a lack of jurisdiction and not upon abstention.

lie against an officer of the Land Department to control him in discharging an official duty which requires the exercise of his judgment and discretion."

In Northern Pacific Railway Company v. McComas, 250 U.S. 387, 39 S.Ct. 546, 63 L.Ed. 1049 (1919), the plaintiff, an individual, claiming the right to land based on adverse possession, brought suit against the Railway Company and secured a decree quieting title which was affirmed by the Oregon Supreme Court. The Supreme Court of the United States reversed. The court held that claims to the land by the Railroad were pending in the Land Department which was charged by law with their examination, determination and disposal of the title accordingly. The court said, page 392, page 548 of 39 S.Ct.: "It is settled that in such a situation the courts may not take up the adjudication of the pending claims, but must await the decision of the land officers and the issue of patents in regular course."

The foregoing were all cases in which the *private claimant* to the land or the mining claim sought interference by the courts with the proceedings then pending before the Land Department.

In the last case relied upon by appellees, Cameron v. United States, 252 U.S. 450, 40 S.Ct. 410, 64 L.Ed. 659 (1920), the action was by the United States to enjoin Cameron and others from occupying, using for business purposes, or asserting any right to or interfering with the public use of land in the Grand Canyon National Monument, and to require the defendants to remove certain buildings, filth and refuse placed thereon in the course of its use by them as a livery stable site. The Secretary of the Interior had found the mining claim invalid, and that proceeding had become final. A decree was entered in behalf of the United States, was affirmed by the Court of Appeals and the Supreme Court affirmed on the ground that the decision of the Secretary of the Interior was conclusive in the absence of fraud or imposition, neither of which was claimed.

On the basis of these cases, the government in its brief in Best v. Humboldt, stated accordingly, "The statutes, regulations issued pursuant thereto, and the judicial precedents announced by this court over more than a century, leave no doubt, then that the only tribunal which was open to *respondents* to establish their rights against the United States was the Department of Interior." Respondents were the mining claimants. The government in its brief then added footnote 8, reading as follows:

"There are cases where in a suit to quiet title by the United States or to eject trespassers from public lands, the courts have, as part of the general issue, determined whether there has been a valid mineral discovery. Kennedy v. United States, 119 F.2d 564 (C.A. 9); United States v. Mobley, 45 F.Supp. 407 (S.D.Cal.); United States v. Schultz, 31 F.2d 764 (N.D. Cal.). *We have found no case where such a determination has been made by a court at the request of a claimant and over the objection of the United States.*" (Emphasis added).

It is on the basis of these cases that the appellees argue in the case at bar, that the United States has no right to go to court to validate its title to the land or its right to possession and damages for trespass, and on the basis of these cases and *Best*, supra, argued and successfully convinced the district court that the court had no jurisdiction of any kind in the case at bar.

The decision in *Best*, supra, was in line with the cases analyzed above. The claimants sought to enjoin the officials of the Bureau of Land Management who had instituted contest proceedings against the mining claims. The district court dismissed the action. The Circuit Court reversed the district court and was in turn reversed by the Supreme Court.

The express holding in *Best*, shown supra, does not support appellees' contentions. We draw from the cases above including *Best*, the conclusion that while a proceeding on a claim

is pending before the Department of the Interior, the courts will not entertain actions by private litigants seeking to restrain the Department, compel its decision or interfere with the administrative processes; that the authorities *do not hold* that the government has no right to enter the United States courts, set up particularly for the handling of government cases, and seek to vindicate its rights to title, its rights to possession or damages for waste or trespass upon land, the title of which is in the government.

The government relies on Kennedy v. United States, supra, where the court states, at page 565 of 119 F. 2d: " * * * We think Judge Bourquin put the matter well and as succinctly as we could do it in the case of United States v. Schultz, D.C.Cal.1929, 31 F. 2d 764: 'The courts are always open to private litigants to determine possessory rights in public land. Gauthier v. Morrison, 232 U.S. [452] 461, [sic] 34 S.Ct. 384, 58 L.Ed. 680. Not to determine title, however, because they have not title. *But the United States having title, the tribunals are always open to it to vindicate its rights therein,* either that of the Land Department or that of the courts, at its election if proceedings are initiated by it. See United States v. Sherman, (8 Cir.) 288 F. 497.' * * * " (Emphasis added)

In view of our holding as to the other contentions made by the government, we do not pass on the question as to whether the government may litigate the validity of a mining claim in the district court, and whether the district court had jurisdiction of such a cause.

## II.

*Did the district court have jurisdiction to determine bad faith in the filing of the mining claim?*

At the outset we should note that there is a vast distinction between making a simple finding as to whether or not a mining claim is filed in good or bad faith and a determination as to the validity otherwise of the claim. Good faith in filing and operation involves the intent and actions of the locator and possessor, while validity of the claim involves compliance with the statutory requirements. In an administrative determination on validity, the expertise of the government agency would be invaluable, while a court could adequately determine the question of good faith.

Bagg v. New Jersey Loan Company, 88 Ariz. 182, 354 P.2d 40 (1960), recently declared (354 P.2d at p. 45):

"It is axiomatic that a locator must act in good faith. * * *

No citation of authority is required to support the statement that the all-pervading purpose of the mining laws is to further the speedy and orderly development of the mineral resources of our country. Consequently, title to mineral lands cannot be acquired by occupancy unless for the prime purpose of mining or extracting minerals. Burns v. Clark, 133 Cal. 634, 66 P. 12; Tit. 30 U.S.C.A. § 22. We therefore hold that an attempted location for any other purpose than that thus specified, is wholly void."

The Act of July 23, 1955, 69 Stat. 368, 30 U.S.C. § 612, quoted supra, expressed the policy of Congress to confine the use of mining claims for mining purposes, and was directed at abuses which had grown up in the use of such claims for other than mining purposes. The Legislative history demonstrates the purpose of the Act, and specifically refers to one of the abuses as the acquisition of mining claims for "residence or summer camp purposes." H.R. 730, 84th Cong. 1st Sess. (1955), p. 6; S.R. 554, 84th Cong. 1st Sess. (1955). U. S. Code Congressional and Administrative News 1955 Vol. 2, p. 2474 at 2479.

United States v. Coleman, 390 U.S. 599, 88 S.Ct. 1327, 20 L.Ed.2d 170 (1968), involved the "marketability" and "prudent man test" as applied to mineral discoveries. But in discussing generally the mining laws, the Court said, at 602, at 1330 of 88 S.Ct.: "Under

the mining laws Congress has made public lands available to people for the purpose of mining valuable mining deposits and not for other purposes." The court then inserted footnote [4] as follows:

"17 Stat. 92, 30 U.S.C. § 29, provides in pertinent part as follows: 'A patent for any land claimed and located for valuable deposits may be obtained in the following manner: Any person * * * having claimed and located a piece of land *for such purposes* * * may file * * *'. (Emphasis added.)"

In this case there was ample evidence from which the trier of fact could have determined that the purported location in May 1961 was not for the purpose of exploring for and developing minerals; and ample evidence that the appellees entered upon and continued to occupy the premises for personal residence purposes and not for mining development at all.

■ In spite of our refusal to pass on the government's first contention, we think the district court had jurisdiction to pass on the good faith or lack of good faith in the filing of a mining claim without necessarily passing on its validity otherwise, under the mining statutes. We are led to this conclusion by the delays and confusion which would follow, if as soon as one mining claim were held invalid, another was filed. If in each instance the government would have to await the determination of the validity of the mining claim to be made by the Department of the Interior, the government could thus be forever kept out of possession of its property.

## III.

*Did the district court have jurisdiction to prohibit further occupation of the land for other than mining purposes, and to grant damages for past trespass, even if the 1961 mining claim was valid?*

The government's third contention involves the good faith of the possessor who is currently using the land. Even if the 1961 mining claim were found to be valid, such a determination would not justify the occupancy and use of the land for other than mining purposes.

In Kennedy v. United States, supra, a homestead case, this court held that the courts are always open to the United States to vindicate its possessory rights in public land. It relied on United States v. Schultz, 31 F.2d 764 (N.D. Cal.1929), involving a mining claim, which reached the same result. While the right of a mining claimant under a valid discovery has been said to be that of exclusive possession, such possession can be maintained against the United States only for mining purposes. United States v. Coleman, supra.

In Teller v. United States, 113 F. 273, 280 (8 Cir. 1901), it was said that location gave no more than the present and exclusive possession of the land for the purpose of mining and did not divest the legal title of the United States or impair its right to protect the land from trespass or waste. The trespass involved was the cutting of timber. United States v. Rizzinelli, 182 F. 675 (D. Idaho 1910), a decision by Judge Dietrich, followed *Teller* and spelled out in detail (pp. 680–684) the reason why the right of the locator to the "exclusive right of possession and enjoyment" granted under 30 U.S.C. § 26 (R.S. § 2322), "is valid to uses incident to mining operations * * *".

More recently United States v. Etcheverry, 230 F.2d 193 (10 Cir. 1956), reviewed these cases. *Etcheverry* was a case where the United States sued to recover damage for trespass through grazing. The Kerogen Oil Company was in possession of the lands by virtue of valid placer mining claims. The defendants leased the land from Kerogen for grazing purposes during 1951–1952. The case turned on the fact that Kerogen in 1953 made application for a patent, made the payment of the required purchase price and in 1954 the final certificate was issued.

The court held that the patent related back to the date of the entries and thus the claim of the United States for what would otherwise be trespass, was defeated. The court said, page 196: "We think the reasoning of the Teller and Rizzinelli cases is sound and we hold that under the statute general grazing rights of the public domain are not included in the possessory rights of a mining claim." The court also considered the cases under 30 U.S.C. § 22 (R.S. § 2319; Feb. 25, 1920, c. 85, § 1, 41 Stat. 437), relating to lands open to purchase by citizens and by those who have declared their intention to become such and stated, p. 195: "We construe these cases to hold that the exclusive possession of the surface of the land to which the locator is entitled is limited to use for mining purposes."

*Best,* supra, is not contrary to these cases since the Supreme Court concluded only that it was not inconsistent for the United States to secure possession in a condemnation case in the district court and at the same time present the issue of validity of the mining claims to the agency entrusted with that task. Nothing in *Best* indicates that there is a lack of jurisdiction in the district court to properly determine the government's right to possession of the land apart from the validity of the mining claim.

Any doubt as to these principles was cleared away by Section 4(a) of the Act of July 23, 1955, 69 Stat. 368, 30 U.S.C. § 612, supra. The section states that a mining claim "shall not be used, prior to the issuance of a patent therefor, for any purposes other than prospecting, mining or processing operations, and uses reasonably incident thereto." No provision that the United States might enforce the statute by action in the district court was necessary. The district courts are open to the United States to enforce its rights and the case law cited above so holds. The district court may not deny the United States injunctive relief or damages if trespass upon the public lands is shown. United States v.

Hosteen Tse-Kesi, 191 F.2d 518 (10 Cir. 1951); United States v. Langendorf, 322 F.2d 25 (9 Cir. 1963).

■ Thus the government can prohibit occupation of a mining claim and collect damages for past trespass where the land is not being used for mining purposes, regardless of whether or not the claim was valid.

■ We hold that the complaint presented questions of fact to be determined by the trial court as to the good or bad faith of the locator in filing the mining claim, and the good or bad faith of the possessor as to uses to which it was being put; and that these were evidentiary questions which the district court had jurisdiction to decide, and should have decided on a factual hearing. It was error to grant the motion for summary judgment.

If the district court on remand, finds that the 1961 mining claim was filed in bad faith, it should then determine the relief to which the government is entitled. Should the district court on remand, find the 1961 mining claim was not filed in bad faith, and was, for the purpose of the case, valid pending the determination of its ultimate validity, then the court must determine, pursuant to 30 U.S.C. § 612, whether the claim is being used "for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto." Any use permitted by the district court should be only the uses described in the statute. Certainly permanent residence of the possessor not reasonably related to prospecting, mining or processing operations is not within the uses described. If the claim is permitted to be worked pending decision on its ultimate validity, the district court can frame a decree which permits the time and extent of valid use, and yet gives the United States the relief it is entitled to under 30 U.S.C. § 612.

The judgment of dismissal is reversed, and the case remanded to the district court for further proceedings.