**UNITED STATES of America,**
**Appellee,**

v.

**Ronald O. LEX; and Kenneth Waggener, Appellants.**

**No. CR S–01–559 LKK.**

United States District Court,
E.D. California.

May 14, 2003.

---

Timothy L Zindel, Federal Defender, Sacramento, CA, for Ronald O Lex (1), defendant.

Krista Joy Hart, Law Offices of Krista J Hart, Sacramento, CA, for Kenneth Waggener (2), defendant.

Samantha Sue Spangler, United States Attorney, Sacramento, CA, for U.S. Attorneys.

### ORDER

KARLTON, Senior District Judge.

Federal regulations define the right to use federal land. They prohibit, *inter alia*, the:

. . . .

(b) Taking possession of, occupying, or otherwise using National Forest System lands for residential purposes without a special-use authorization, or as otherwise authorized by Federal law or regulation

36 C.F.R. 261.10(b)

and provide for criminal sanctions for violation.[1]

Appellants were prosecuted before a United States Magistrate Judge for a violation of the above regulation. They brought a Rule 29 motion at the close of the government's case, contending that they were not guilty because they were "otherwise authorized" to camp on National Forest land by virtue of a mining claim. The magistrate judge denied appellants' motion and appellants were ultimately convicted.

Appellants seek review and ask that this court remand for a judgment of acquittal or, in the alternative, that their convictions be vacated and their cases be remanded to the magistrate judge for a new trial.

## I.

### EVIDENCE AT TRIAL

The evidence at trial showed that appellants had a motor home, travel trailer, pickup truck, and sedan on National Forest System lands adjacent to Cecil Creek. On September 17, 2000, appellants told Forest Service Officer Michael Irvine that they had been living in the trailer and motor home since the suction dredge season began, approximately July 1, 2000. ER at 22:21–23:4. On September 29, ER at 0026, and again on November 4, 2000, ER at 0035, Irvine found appellants were still there. Appellants told Irvine that they believed they were authorized to stay on the land by virtue of their mining activities. ER at 0042, 0100:8–22, 0102:4–14.

On his visits to the appellants' camp, the officer testified that he observed no earthmoving equipment such as bulldozers or backhoes. ER at 0032:4–9. He reached the camp using existing roads that had not been modified or changed. ER at 0033:9–15. He observed that the camp consisted of vehicles and some mining equipment, including " a pan, a sifter," "some wading clothes, ... and at the creek, which was away from the camp, a portable suction dredge." ER at 0033–34:7. The officer observed no structures built on the campsite, and "everything ... there for the purposes of camping had wheels...." ER at 0036:15–19.

Appellant Lex testified that appellants camped in a motor home and used a trailer for their tools. ER at 0085:1–4. They cooked inside the motor home and hauled their garbage to the Scott River collection site. ER at 0085:12–14. The motor home had an inside commode that appellants used for a bathroom, ER at 0085:15–16, and they disposed of grey water (from washing) and black water (containing human waste) off site. ER at 0085:17–0086:9. Appellants did not cut down any trees. ER at 0084:21–22.

Officer Irvine testified that appellants had no other address but a post office box. ER at 0045:15–24. Appellant Lex admitted at trial that he continually occupied the site from September 17, through November 4, 2000, and that he had no other residence at that time. ER at 0100:3–7.

Appellant Lex testified that he had located the claim on which appellants were camping, and subsequently recorded it with the County on September 6, 2000. See ER at 94:24–95:10. He also testified at trial that he had timely filed that location with the BLM, but the filing had been returned because appellants had overpaid. ER at 0102:15–23; 0104:6–131; 0106:21–107:6. The documentary evidence at trial appears to pertain to two different loca-

---

1. 36 C.F.R. 261.1b provides:
 Any violation of the prohibitions of this Part (261) shall be punished by a fine of not more than $500 or imprisonment for not more than six months or both pursuant to Title 16 U.S.Code Section 551, unless otherwise provided.

tions. One location, titled Cecil Creek # 1, occurred on July 12, 2000. *See* Defs' Exh. D. The other, titled Wild Turkey # 1, occurred on November 15, 2000. *See* Defs' Exh. E. The documentary evidence showed that the Wild Turkey location was filed with the BLM on November 20, 2000. Govt's Exh. 15. There was no documentary evidence showing if or when the Cecil Creek location was filed with the BLM. At trial, it was never explained which of the two locations referred to the parcel on which appellants' had been staying, or whether both included the appellants' campsite.

On November 4, 2000, appellants were cited for residing on National Forest land without authorization in violation of 36 C.F.R. 261.10(b). *See* ER at 0001, 0002.

## II.

## STANDARD OF REVIEW

█ Where appellants challenge a lower court's denial of their Rule 29 motion, the scope of review depends upon whether the defendants proceeded with their defense after the denial. Where, as here, defendants did proceed, the motion is deemed to be waived. The court can, of course, review the denial of defendants' renewed motion at the close of trial, but review of the denial of the later motion must take into account all of the evidence. *See United States v. Alexander*, 48 F.3d 1477, 1490 n. 10 (9th Cir.1995).[2]

Where a district court reviews a conviction by a magistrate judge, the standard of review is the same as when a court of appeals reviews the judgment of a district court. *See* Fed.R.Crim.P. 58(g)(2)(D). The reviewing court reviews the trial court's findings of fact for clear error. *Burlington Northern, Inc. v. Weyerhaeu-*

ser Co., 719 F.2d 304, 307 (9th Cir.1983). "A finding of fact is deemed clearly erroneous when although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id.* Conclusions of law are reviewed *de novo. Id.* Unless a mixed question of fact and law is primarily factual, mixed questions are reviewed *de novo. United States v. McConney*, 728 F.2d 1195, 1199–1204 (9th Cir.1984) (en banc).

## III.

## DISCUSSION

The offense for which appellants were convicted has three elements: 1) occupying or using Forest Service land, 2) for residential purposes, 3) without a special-use authorization or as otherwise authorized by Federal law. *See* 36 C.F.R. § 261.10(b), *supra.* The first element is not in dispute. Appellants, however, take issue with the magistrate judge's findings as to the second and third elements. They argue that the magistrate judge erroneously relied on a regional camping order to determine that they were on the land for residential purposes, and that the magistrate judge incorrectly determined that they were not authorized to camp on the land by virtue of their mining activity. As I explain below, while I have not adopted many of appellants' underlying arguments, I nonetheless agree with their conclusions. Before undertaking that explanation however, I briefly discuss the basics of mining law pertinent to this case and clarify the meaning of certain terms of art that may otherwise be misused or misunderstood.

---

**2.** While the appellants did not expressly renew their motions for acquittal, where a case is tried to the bench, the Ninth Circuit has determined that a motion for acquittal is im- plicit in a plea of not guilty. *See United States v. Atkinson*, 990 F.2d 501, 503 (9th Cir.1993) (en banc).

## A. SUMMARY OF MINING LAW

■ Under the Mining Law of 1872, miners are given varying rights to the land that they mine, depending upon what stage they have completed in the process of patenting a mining claim. The first stage is referred to as the "location" of a claim. Location is generally achieved by marking a parcel of land.[3] *See United States v. Shumway*, 199 F.3d 1093, 1099 (9th Cir. 1999). Upon location, the locators of the claim "so long as they comply with the laws ... shall have exclusive right of possession and enjoyment of all the surface located within the lines of their locations ...." 30 U.S.C. § 26; *Shumway*, 199 F.3d at 1099. Thus, although the locator has no patent, at this point he nonetheless has an interest in the land. *See Shumway*, 199 F.3d at 1100 (citing *Bradford v. Morrison*, 212 U.S. 389, 394, 29 S.Ct. 349, 53 L.Ed. 564 (1909) (unpatented "title of locator" is "property in the fullest sense of the word")).

To retain one's interest in an unpatented claim certain requirements must be met. First, under the Federal Land Policy and Management Act of 1976 (FLPMA), 43 U.S.C. § 1744, owners of unpatented claims must record those claims with the Bureau of Land Management ("BLM") within ninety days of location, and annually thereafter. The failure to timely record a claim "shall be deemed conclusively to constitute an abandonment of the mining claim ...."[4] 43 U.S.C. § 1744(c); *See also* 43 C.F.R. § 3833.4(a)(2). Second, owners of unpatented claims are required to perform "not less than $100 worth of labor ... or improvements made during each year." 30 U.S.C. § 28.

■ Following location, a claim owner may apply for a patent with the BLM, showing compliance with the laws regarding location and filing proof that they posted notice of their application for a patent. *See Shumway*, 199 F.3d at 1099; 30 U.S.C. § 29; 30 U.S.C. § 35 (placer claims subject to same requirements for entry and patents as vein and lode claims). If no adverse claim is filed, the applicant is presumed to be entitled to a patent. *See id.* At this point, the claim is considered "perfected." *See Shumway*, 199 F.3d at 1100, 1101. When a claim is perfected, the failure to perform annual assessment work will not work a forfeiture of the claim. Rather, the locator's "possessory right, for all practical purposes of ownership, is as good as though secured by patent." *Id.* (quoting *Wilbur v. United States ex rel. Krushnic*, 280 U.S. 306, 317, 50 S.Ct. 103, 74 L.Ed. 445 (1930)).

■ Although a patent may be perfected, it will not be issued until there has been a determination that the claim is "valid." *See Shumway*, 199 F.3d at 1099; *Independence Mining Co., Inc. v. Babbitt*, 105 F.3d 502, 506 (9th Cir.1997). To determine validity, the BLM must assess whether "there was a legitimate discovery of a valuable mineral deposit on the land which a prudent man would be justified in

---

3. The regulations issued by the Secretary of the Interior provide in pertinent part:

A location is made by (a) staking the corners of the claim ... (b) posting notice of location thereon, and (c) complying with the State laws, regarding the recording of the location in the county recorder's office, discovery work, etc.

43 C.F.R. § 3831.1 (titled "Manner of initiating rights under locations"). The regulations further provide that a claim is located on "the date determined by State law in the local jurisdiction in which the unpatented mining claim ... is situated." 43 C.F.R. § 3833.0–5(h). Under California law, a claim is located by posting a notice of location on the claim and marking its boundaries. *See* Cal. Pub. Res.Code § 3902.

4. It cannot be considered a failure to file sufficient to constitute abandonment, however, if the filing was timely, but merely defective. *See* 43 U.S.C. § 1744(c).

developing." *United States v. Curtis–Nevada Mines, Inc.,* 611 F.2d 1277, 1282 (9th Cir.1980). The BLM determination of validity must comport with due process, providing, at minimum, notice and a hearing. *See Best v. Humboldt Placer Mining Co.,* 371 U.S. 334, 338, 83 S.Ct. 379, 9 L.Ed.2d 350 (1963).

This scheme, still in effect, began to appear problematic during the last century. So long as mining claimants did not apply for a patent, "[a]s a practical matter, [they] could remain in exclusive possession of the claim without ever proving a valid discovery or actually conducting mining operations." *Curtis–Nevada Mines, Inc.,* 611 F.2d at 1281–82. Thus, many "claims" were sham, in reality being used for timber harvesting, agriculture, or the locator's "own private fishing camp." *Shumway,* 199 F.3d at 1101.

 Congress addressed the problem of sham claims by passage of the Multiple Use Act in 1955. *See Curtis–Nevada Mines, Inc.,* 611 F.2d at 1283; *Shumway,* 199 F.3d at 1101. Under the Act, the exclusive possession enjoyed by owners of unpatented claims is limited by the right of the United States to manage surface resources and to permit others to use the surface, so long as such use does not "materially interfere with prospecting or mining operations." *Id.* The Multiple Use Act further provided that "a mining claim shall not be used, prior to issuance of patent therefor, for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto." *Shumway,* 199 F.3d at 1101.

 As a result of the Multiple Use Act, owners of unpatented mining claims must comply with government regulation of the surface of their claims, so long as that regulation does not "materially interfere[ ] with prospecting or mining operations." *Curtis–Nevada Mines, Inc.,* 611 F.2d at 1283. Additionally, when a claim is used for purposes not reasonably incident to mining, the government may challenge the good faith of the claim in the courts of the United States, even though there has not yet been an administrative determination of invalidity. *See United States v. Nogueira,* 403 F.2d 816, 823–825 (9th Cir.1968).

There is no question that, pursuant to the Multiple Use Act, the appellants were required to comply with Forest Service regulations concerning mining on Forest Service land. As I will explain, however, the magistrate judge's interpretation of the Forest Service regulations at issue, as well as his understanding of other aspects of mining law, were in error.

## B. LEGAL CONCLUSIONS AT TRIAL

### 1. The Use of the Regional Camping Order to Establish Residential Purpose

 As the parties have acknowledged, the regulations do not define the meaning of "residential purposes." Nor was the meaning of this term, an element of the offense for which appellants were convicted, discussed at trial or in the magistrate judge's memoranda of decision. Appellants contend, however, that the magistrate judge improperly relied on a regional Forest Order limiting camping to convict them of occupying the land with residential purpose and without authorization.

Apart from prohibiting the use of land for residential purposes, the regulations separately prohibit camping for longer than the limits provided by a regional camping order. *See* 36 C.F.R. § 261.58(a). A Klamath National Forest order, issued pursuant to section 261.58(a), prohibits camping in excess of fourteen days. The magistrate judge appears to have relied on this regional camping order in convicting appellants. Explaining that appellants' mining operation did not justify their al-

leged residence on the claim, the magistrate judge stated:

> The Klamath National Forest does not prohibit miners from occupying or residing on their claim for more than fourteen days per calendar year. It only requires that an approved Plan of Operation be obtained form [sic] the District Manager.

See Excerpts of Record ("ER") at 162 (Lex decision); at 167 (Waggener decision). See also ER at 164, 169 (stating the magistrate judge's understanding that if appellants wanted to stay for period greater than that provided by regional camping order, they had to get special use authorization under 36 C.F.R. §§ 251.50 et seq.)

From the above, it appears that the magistrate judge determined that any occupancy beyond fourteen days, absent authorization, amounted to a violation of section 261.10(b). Such a conclusion was erroneous.

 As the parties agree, the camping order was not relevant to a determination of whether or not the appellants were on the land for "residential purposes." Certainly if one had been camping for less than fourteen days, the camping order might be relevant to show that the occupation of the land was permissible camping and not prohibited residency. It

does not necessarily follow, however, that the inverse would be true. Indeed, if by camping beyond the time allowed in a regional order, one was also understood to be using the land for residential purposes, the regulations separately proscribing each activity would be duplicative. Such a conclusion, however, would violate the rule of construction that "legislative enactments should not be construed to render their provisions mere surplusage." Dunn v. Commodity Futures Trading Comm'n, 519 U.S. 465, 472, 117 S.Ct. 913, 137 L.Ed.2d 93 (1997).[5] Accordingly, it would be a legal error to rely on the regional camping order to determine that the residential purposes element was satisfied. As far as I can tell, however, that is what the magistrate judge did.[6] In sum, I must agree with the appellants that the magistrate judge erred in looking to the regional camping order to establish residential purpose.

## 2. The Determination that Appellants Were Not "Otherwise Authorized" to Occupy the Land

 36 C.F.R. § 261.10(b), under which appellants were convicted, does not prohibit occupancy that is subject to a special use authorization or that is "otherwise authorized." Here, because activity

---

5. Where the agency has not issued an interpretation of a regulation, see Pauley v. Beth-Energy Mines, Inc., 501 U.S. 680, 702, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991), the canons of construction apply. See, e.g., Irvington Moore, Div. of U.S. Natural Res., Inc. v. Occupational Safety and Health Review Comm'n, 556 F.2d 431, 435 (9th Cir.1977); Kearfott Guidance and Navigation Corp. v. Rumsfeld, 320 F.3d 1369, 1377 (Fed.Cir.2003).

6. The government insists that the magistrate judge did not rely on the regional camping order, but simply referred to it to foreclose a possible defense by the appellants. The government does not go into detail, or refer to specific language in the magistrate judge's

decision, to support its contention. Accordingly, it is difficult to understand how the government arrived at its conclusion. Put directly, I do not read the magistrate judge's decision as simply foreclosing a possible defense, and given the course of the trial, I find it unlikely that the magistrate judge looked to the camping order only for the purpose asserted. The magistrate judge specifically sustained appellants' objection to receipt of the order, ER at 77:17–21, when the government argued that the camping order was relevant "because there's a possibility that the defense would make an argument that they were residing for other than residential purposes, but for camping ....."

covered by the Forest Service's mining regulations is excluded from the special use regulations, *see* 36 C.F.R. § 251.50(a),[7] the appellants could not obtain a special use authorization for their activity which was subject to the mining regulations. Nonetheless, they could comply with section 261.10(b) if they were otherwise authorized to occupy the land.

The magistrate judge concluded that even if appellants had a mining claim, they were not authorized to remain on Forest Service land absent a plan of operations. In the alternative, the magistrate judge found that even if ownership of a mining claim "otherwise authorized" appellants to occupy the land, appellants had not created a mining claim as of the time that they were cited for a violation of § 261.10(b). As I explain, both conclusions were erroneous.

### a. *Authorization Absent a Plan of Operations*

As explained above, locators of mining claims, "so long as they comply with the laws of the United States, shall have the exclusive right of possession and enjoyment of all the surface included within the lines of their locations." 30 U.S.C. § 26 (codifying the Mining Law of 1872). This general provision is not without its limitations. There were two possible sources of restriction upon the appellants in this case, assuming that they were locators within the meaning of the statute.

 First, under the Surface Resources and Multiple Use Act of 1955 (Multiple Use Act), appellants could only occupy the land for purposes of mining activity or "uses reasonably incident thereto." *United States v. Shumway*, 199 F.3d 1093, 1101 (9th Cir.1999) (citing 30 U.S.C. § 612(b)); *see also* 30 U.S.C. § 612(a) ("a mining claim shall not be used, prior to issuance of a patent therefor, for any purposes other than prospecting, mining or processing operations and uses reasonably incident thereto.") In considering whether occupation of the claim is reasonably incident to mining, the Ninth Circuit has foreclosed the notion that "a dwelling is not reasonably incident to a genuine mine or mill site. The need of humans to eat, sleep, and relax in the remote locations where mines have often developed has always necessitated mining camps, bunkhouses, and other dwellings." *Shumway*, 199 F.3d at 1106. Thus, the Multiple Use Act would provide a basis for the Forest Service to take action to keep the appellants from camping on the land only if their claim was not a good faith claim, *see, e.g., United States v. Nogueira*, 403 F.2d 816 (9th Cir.1968), but rather, the sort of sham claim which the Multiple Use Act sought to prevent. *See Shumway*, 199 F.3d at 1101.

Here, the magistrate judge looked to the *Nogueira* line of cases among the authorities he cited for the broad proposition that the Forest Service could restrict occupancy on public lands. *See* ER at 0162, 0167. The magistrate judge did not acknowledge, however, that the conclusion in *Nogueira*, that the government could seek to eject persons occupying public land, was limited in that it could do so only if the claim was

---

7. This section of the "Special Uses," subpart of the regulations is entitled "Scope" and reads:

> All uses of National Forest System lands, improvements, and resources, except those provided for in the regulations governing the disposal of timber (part 223) and minerals (part 228) and the grazing of livestock (part 222), are designated "special uses." Before engaging in a special use, persons or entities must submit an application to an authorized officer and must obtain a special use authorization from the authorized officer unless that requirement is waived by paragraph (c) of this section.

found to be a sham. At trial, however, there was no contention that the appellants' claim was a sham. Nor had appellants' claim been determined to be invalid by the BLM. Thus, assuming that appellants had located a claim within the meaning of the 1872 Mining Law, there was no reason to believe that their occupancy of the claim was not "reasonably incident" to mining, and therefore unauthorized.

■ The Multiple Use Act also provides a second form of restriction. As also noted above, the government may issue regulations to restrict the use of the surface of land upon which a claim is located. Looking to Forest Service regulations, the magistrate judge found that, even assuming appellants had a claim, they were nonetheless required to have an approved plan of operations before they could occupy their claim.

The regulations at issue provide the following two-step process for those whose mining operations might adversely impact surface resources:

> Except as provided in paragraph (a)(2) of this section, a notice of intention to operate is required from any person proposing to conduct operations which might cause disturbance of surface resources. Such notice of intention shall be submitted to the District Ranger having jurisdiction over the area in which the operations will be conducted. If the District Ranger determines that such operations will likely cause significant disturbance of surface resources, the operator shall submit a proposed plan of operations to the District Ranger.

36 C.F.R. § 228.4(a). Thus, absent an (a)(2) exemption, first a notice of intention must be filed. Second, upon receipt of that notice, should the Ranger determine

that an operation would likely cause a significant surface disturbance, then a plan of operations should be filed.[8]

Here, the Forest Service argued, and the magistrate judge concluded, that the appellants could not lawfully camp on their claim since they did not file a notice of intention to operate and a plan of operations. The magistrate judge rejected the argument that appellants were exempt from these requirements, concluding that appellants did not fall into any of the exceptions listed for plans of operations, and reasoning that appellants could not escape the requirements merely by contending that their operations were not those that "might cause disturbance of surface resources." ER at 0168. The magistrate judge, however, did not consider whether appellants were exempted from the initial requirement to file a notice of intent. As I now explain, it appears they were.

■ Subsection (a)(2) provides, in pertinent part:

> A notice of intent need not be filed:
>
> (i) Where a plan of operations is submitted for approval in lieu thereof,
>
> (ii) For operations excepted in paragraph (a)(1) of this section from the requirement to file a plan of operations,
>
> (iii) For operations which will not involve the use of mechanized earthmoving equipment such as bulldozers or backhoes and will not involve the cutting of trees.

36 C.F.R. 228.4(a)(2). The regulation does not specify whether factors (i) through (iii) should be read in the conjunctive or disjunctive. Once again, the standard canons of constructions resolve the issue. The canons require that each portion of the regulations given effect, *see Chickasaw*

---

**8.** There are some exceptions to the plan of operations requirement as well, set forth in (a)(1) of § 228.4, but I need not reach these.

*Nation v. United States*, 534 U.S. 84, 93, 122 S.Ct. 528, 151 L.Ed.2d 474 (2001), and if read conjunctively, exceptions (i) and (ii) would cancel each other out in violation of the canon.

It was uncontested at trial that, at the time the appellants were camping, neither their mining operations nor their camping activities incident to those operations involved any earthmoving equipment or cutting of trees. Thus, under the regulations, until appellants determined that their operations would involve the use of earthmoving equipment or tree-cutting, they were under no obligation to file a notice of intent.[9] Under section 228.4(a), without a notice of intent, a Ranger would not have the opportunity to find that a significant disturbance of surface resources would likely result, such that a plan of operation could be required.[10] Accordingly, the appellants would not be in violation of the regulations.

In sum, assuming that appellants were camping incident to mining a claim, then, the magistrate judge erred in concluding that they were not authorized to do so by the Mining Law of 1872, as appellants were not in violation of the Forest Service regulations pertaining to mining claims.

As noted above, however, the magistrate judge concluded in the alternative that the appellants had not created a claim as of the date that they were cited for violating section 261.10(b). If this were so, then appellants would not have been "otherwise authorized" under the Mining Law to occupy the land. As I now explain, though, the magistrate judge erred in determining that appellants had not created a claim.

### b. *Creation of a Claim*

 The magistrate judge concluded in his orders adjudging appellants guilty that the defendants' Exhibit E and the Government's "Exhibit 15 reflects that the claim of [defendants] was not properly filed (thus created) until November 15, 2000." (Citing 43 C.F.R. § 3833.1–2). The "filing" referenced by the magistrate judge appears to be filing with the BLM, which the exhibits reflect and which the cited regulation concern. As the government concedes, however, a claim is not created by filing a claim with the BLM. Rather, as explained above, a claim is created by location. *See* note 3, *supra*. Recordation with the BLM is only relevant as the failure to timely record may result in a claim being abandoned. 43 U.S.C. § 1744(c). Accordingly, the legal basis upon which the mag-

**9.** Notably, once appellants did decide that they wished to use a backhoe (a month after they were cited), they filed a notice of intent. *See* ER at 0126.

**10.** The fact that appellants were exempted from the initial notice of intent requirement distinguishes this case from those cited by the magistrate judge and by the government for the proposition that the government can find a residence to be a significant disturbance of surface resources. *See* ER at 163–63 (Lex decision), 168–69 (Waggener decision). In none of the cited cases were the activities, incident to mining, found to be exempt from the notice of intent requirement. *See United States v. Brunskill*, 792 F.2d 938 (9th Cir. 1986); *Anderson v. United States Forest Ser-*

*vice*, 645 F.Supp. 3 (E.D.Cal.1985); *United States v. Langley*, 587 F.Supp. 1258 (E.D.Cal. 1984). Thus, the government had the opportunity in those cases to make a determination concerning whether the residences at issue (all fixed residential structures) were significant disturbances of surface resources.

In distinguishing this case from those cited, the court is not unsympathetic to the problem posed by the regulations in this case. As the regulations are currently structured, so long as no earthmoving or tree-cutting is involved, a miner can camp on his claim indefinitely, despite the environmental impact that such activity may have. The solution to this problem, however, is to amend the regulations—a remedy well beyond the authority of the courts.

istrate judge decided that appellants had not created a claim was in error.

## C. HARMLESS ERROR ANALYSIS

When the judge in a bench trial has made a legal error in the course of convicting, the error is reviewed using the same harmless error standard that would apply to an erroneous jury instruction. *See Wilson v. United States,* 250 F.2d 312, 324 (9th Cir.1957). When a jury has been given an incorrect instruction of the law, it "requires reversal unless there is no reasonable possibility that the error materially affected the verdict or, in other words, that the error was harmless beyond a reasonable doubt." *United States v. Romo–Romo,* 246 F.3d 1272, 1274 (9th Cir. 2001). Thus, in a bench trial where the legal error goes to an element of the offense, the reviewing court does not "become in effect a second jury to determine whether the defendant is guilty." *Neder v. United States,* 527 U.S. 1, 19, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Rather, only "where the reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error," *id.* at 17, 119 S.Ct. 1827, is the error harmless.

As explained above, several legal errors were committed in this case. First, there was the improper reliance on a camping limitation to find that appellants had a residential purpose. It is impossible to say whether the residential purpose element of the offense was supported by overwhelming evidence, however, unless the correct standard for determining resi-

dential purpose is known. Here, the correct standard is far from clear.

This court need not decide whether the regulations were unconstitutionally vague,[11] as it is clear that the magistrate judge's other errors were not harmless. Rather, they were necessary to his conclusion that the appellants were not authorized by their mining activities.

As explained above, assuming that the appellants had a claim, they were not required to have a plan of operations. Thus, whether the appellants had a claim during the time period for which they were cited was a key question. The magistrate judge answered this question in the negative on the erroneous premise that appellants had not created a claim until they filed with the BLM. This error would only be harmless if the evidence overwhelmingly showed that, using the proper legal standard, the appellants indeed had no claim during the time period for which they were cited. As I now explain, it does not.

The evidence at trial concerning appellants' claim or claims was confused, at best. The appellants submitted evidence of two different locations, one titled Cecil Creek # 1, located July 12, 2000, *see* Defs' Exh. D, and the other titled Wild Turkey # 1, located November 15, 2000. *See* Defs' Exh. E. The evidence showed that the Wild Turkey claim was filed with the BLM on November 20, 2000. *See* Govt's Exh. 15. The evidence does not conclusively show which claim appellants were camping on, as it was not noted at trial that the evidence pertained to two separately located claims.

---

11. There is a serious argument to be made that the regulation was "so vague and standardless that it leaves the public uncertain as to" what is prohibited. *City of Chicago v. Morales,* 527 U.S. 41, 56, 119 S.Ct. 1849, 144 L.Ed.2d 67 (1999) (quoting *Giaccio v. Pennsylvania,* 382 U.S. 399, 402–403, 86 S.Ct. 518,

15 L.Ed.2d 447 (1966)). As such, the enforcement of the regulation would offend due process. In any event, the rule of lenity requires that courts infer the rationale most favorable to defendants in construing the residential purpose element. *See United States v. Martinez,* 946 F.2d 100, 102 (9th Cir.1991).

If the appellants had been camping on the Cecil Creek location, then clearly, by their July 12, location, they created the claim well before their November 4, 2000 citation. Appellant Lex's testimony, if it is to be credited, supports this. *See* ER at 94:24–95:10 (the claim on which appellants were camping was located and recorded with the county by September 6, 2000). Of course, even if appellants had been camping on their Cecil Creek claim, had they failed to timely file that location with the BLM on or before October 12, 2000, that claim would have been deemed abandoned before they were cited on November 4, 2000. *See* 43 U.S.C. § 1744(c); 43 C.F.R. § 3833.4(a)(2). The evidence pertaining to the timely filing of the Cecil Creek location, however, is inconclusive. Although no documentary evidence showed that the Cecil Creek location was timely recorded with the BLM, no evidence showed that it was not timely recorded. Further, appellant Lex testified that he had timely recorded with the BLM the location on which appellants were camping, but that the paperwork was returned by virtue of improper payment. If the claim to which Lex referred was the Cecil Creek claim, and if his testimony concerning the BLM filing were credited, then appellants had not abandoned the claim at the time they were cited. *See* 43 U.S.C. § 1744(c) (defective but timely filing with the BLM would not constitute abandonment).

Given the questions left by the evidence, it cannot be said that there was overwhelming evidence that appellants did not have a claim during the time period for which they were cited, nor did the magistrate judge make the factual findings necessary to support a determination that appellants had no claim. Thus, it was not harmless error when the magistrate judge concluded that no claim was created absent filing with the BLM.

## IV.

## CONCLUSION

Based on the foregoing, the judgments of conviction are hereby REVERSED and the matter is remanded to the magistrate judge for further proceedings not inconsistent with the opinion.

IT IS SO ORDERED.