Stanley C. RYBACHEK and Rosalie A. Rybachek, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 379–89L.

United States Claims Court.

June 17, 1991.

Stanley C. Rybachek and Rosalie A. Rybachek, pro se.

Brian J. Plant, Washington, D.C., with whom was Asst. Atty. Gen. Richard B. Stewart, for defendant.

## OPINION

MARGOLIS, Judge.

This case is before the court on the defendant's motion to dismiss, or in the alternative, for summary judgment and on the plaintiffs' cross-motion for summary judgment. The plaintiffs, owners and operators of a gold placer mine, seek recovery from the defendant for deprivation of property without due process, for deprivation of adequate income, and for deprivation of their property by the defendant's permit limitations and conditions. After careful consideration of the record, and after hearing oral argument, the defendant's motion to dismiss, or in the alternative, for summary judgment is granted in part and denied in part, and the plaintiffs' cross-motion for summary judgment is denied.

## FACTS

The plaintiffs, Stanley C. Rybachek and Rosalie A. Rybachek, own and operate a gold placer * mine in Alaska consisting of 255 acres of patented claims and 21 unpatented mining claims. Environmental Protection Agency ("EPA") regulations and the Clean Water Act ("CWA") govern discharges from the mining site into local waters. *See Trustees for Alaska v. EPA,* 749 F.2d 549, 552–53 (9th Cir.1984) (describing gold placer mining and the application of the CWA to this activity). The Rybacheks contend that the limitations and conditions of their discharge permit forced them to curtail the hydraulic removal of overburden and made mining the property unprofitable. The Rybacheks allege that mining is the only economically viable use of their land, and that the land can be

successfully mined only by means of hydraulic removal of overburden.

Paragraph III of the amended complaint asserts a variety of instances in which the Rybacheks contend that EPA did not follow its own statutes and regulations. The Rybacheks contend that EPA's failure to follow its own statutes and regulations "deprived plaintiffs of valuable property rights and livelihood without procedural due process ... under the 5th Amendment to the Constitution." In paragraph IV, the Rybacheks also assert that EPA's failure to undertake actions previously mentioned and certain other actions, as required by the Clean Water Act, deprived the Rybacheks of "adequate income during the past 10 years" and ask for damages of $1,000,-000. In paragraph V, the Rybacheks additionally argue that they were "forced to abandon their hydraulic mining operation because of permit limitations and conditions impossible to comply with at this site" and that the government "deprived Plaintiffs of their valuable property right (water rights) and their ability to produce a livelihood from their mining property." The Rybacheks seek damages of $51,000,000.

## DISCUSSION

*Failure to State a Claim*

█ The government asserts that the plaintiffs' takings theory is that the United States, through the EPA, acted illegally, in disregard of its own statutes and regulations, resulting in a taking. "The Tucker Act suit in the Claims Court is not ... available to recover damages for unauthorized actions of government officials." *Florida Rock Industries, Inc. v. United States,* 791 F.2d 893, 898 (Fed.Cir.1986), *cert. denied,* 479 U.S. 1053, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987); *see also Torres v. United States,* 15 Cl.Ct. 212, 215 (1988). The government concludes that this court does not have jurisdiction, and the complaint should be dismissed because the plaintiffs pled that illegal government acts resulted in the taking.

* A placer is an alluvial or glacial deposit containing particles of gold.

This court reads the plaintiffs' complaint as setting forth three separate causes of action: (1) a due process claim; (2) a claim that the government's failure to act deprived the plaintiffs of adequate income; and (3) a takings claim that government permit limitations and conditions deprived the plaintiffs of their property. This court does not have jurisdiction over the plaintiffs' claim for money based on alleged violations of due process rights, and therefore this claim is dismissed. *See, e.g., Cabrera v. United States,* 10 Cl.Ct. 219, 221–22 (1986). This court does not recognize a cause of action for government failure to act resulting in deprivation of adequate income, and this cause of action is also dismissed. However, paragraph V states a cause of action for deprivation of property by government permit limitations and conditions. This claim is separate and apart from the paragraph III due process claim. Paragraph V does not indicate that the permit limitations and conditions were illegal or unlawful. This position is consistent with the Rybacheks' statement, in the Joint Preliminary Status Report filed with this court, that the takings claim is an alternative to the other claims. This court has jurisdiction over the Rybacheks' takings claim.

*The Takings Claim*

■ The Fifth Amendment provides that "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. Just compensation is provided not only for the physical seizure or invasion of property by the government, but also when government regulations have a similar effect. *See, e.g., First English Evangelical Lutheran Church v. County of Los Angeles,* 482 U.S. 304, 316–17, 107 S.Ct. 2378, 2386–87, 96 L.Ed.2d 250 (1987). A regulatory taking occurs either when the imposition of a government regulation fails to substantially advance a legitimate government interest or when the imposition of a governmental regulation has the effect of depriving the owner's property of economically viable use. *E.g., Keystone Bituminous Coal Association v. DeBenedictis,* 480 U.S. 470, 485, 107 S.Ct. 1232, 1241, 94 L.Ed.2d 472 (1987) (quoting

*Agins v. Tiburon,* 447 U.S. 255, 260, 100 S.Ct. 2138, 2141, 65 L.Ed.2d 106 (1980)).

■ The EPA's permit requirements clearly advance an important governmental interest, as stated in the Clean Water Act, the "national goal that the discharge of pollutants into navigable waters be eliminated ..." 33 U.S.C. § 1251(a)(1) (1988); *see Trustees for Alaska v. EPA,* 749 F.2d at 559. The parties in this case contest whether the Rybacheks were denied the economically viable use of their land and water so as to constitute a taking.

The Supreme Court has focused on a three-factor test in considering economic viability in regulatory takings cases: (1) the character of the governmental action; (2) the economic impact of the regulation or the governmental action on the claimant; and (3) the extent to which the regulation or governmental action interferes with reasonable investment-backed expectations. *See, e.g., Keystone Bituminous Coal Association v. DeBenedictis,* 480 U.S. at 495, 107 S.Ct. at 1247. This court reviews the parties' cross-motions for summary judgment to determine whether genuine issues of material fact exist with respect to the economically viable use of the Rybacheks' property by applying this three-factor test. The court resolves all doubts, inferences, or issues of credibility under these motions against the moving party, *see, e.g., Loveladies Harbor, Inc. v. United States,* 15 Cl.Ct. 381, 398 (1988), *appeal docketed,* No. 91–5050 (Fed.Cir. Feb. 11, 1991), and considers the motions in view of the fact-intensive nature of just compensation cases, *see id.* (citing *Yuba Goldfields, Inc. v. United States,* 723 F.2d 884, 887 (Fed.Cir.1983) and *Anchor Estates, Inc. v. United States,* 9 Cl.Ct. 618, 622 (1986)).

With respect to the first factor, the character of the government action, this court must inquire whether the government act closely parallels an act of eminent domain. *Loveladies Harbor,* 15 Cl.Ct. at 391. "The central question is whether the act is equivalent to the physical invasion of *substantial rights* held in the property." *Id.* These rights include the right to possess,

use, and dispose of the property, as well as the right to exclude others. *Id.* In our case, the Rybacheks claim that they are prevented from a substantial use of their property. However, their rights to possess, dispose, and exclude others are not directly affected. Therefore, the character of the government action in this case is not equivalent to the physical destruction or intrusion of an act of eminent domain. *See id.* This factor, as a matter of law, weighs against finding a taking of the Rybacheks' land.

■ The second and third factors, the economic impact of the regulation and interference with reasonable investment-backed expectations, involve a comparison of the property before and after the regulation's alleged interference including a comparison of property value. The mere diminution in property value, as opposed to the destruction of economically viable use, does not constitute a regulatory taking. *See, e.g., id.* With respect to the second and third factors, this court finds that there are genuine issues of material fact precluding summary judgment for either party.

*Review of the Defendant's Motion for Summary Judgment*

The defendant moves for summary judgment claiming that the Rybacheks were not deprived of economically viable use of their property. The defendant bases its claims on the fact that the Rybacheks have mined their land continuously since 1979, admit only to losing their subsurface rights and not their surface rights, and retain valid water rights.

The fact that the Rybacheks continued to mine the property does not establish as a matter of law that the Rybacheks were not deprived of economically viable use of their property. The Rybacheks allege facts sufficient to avoid summary judgment: that the land is useful only for mining; that they were unable to mine economically because of permit restrictions; that the grant from the State of Alaska was for an experimental method which did not prove to be economically feasible; and that the cost of mining under the permit restrictions far exceeded the value of the gold.

At trial, it is possible that defendant could prove that the land is useful for purposes other than mining. The Rybacheks' property may possess recreational rather than commercial utility, for example. *See Hendricks v. United States,* 14 Cl.Ct. 143, 155 (1987). On the present record, however, this court finds that there are genuine issues of material fact in dispute precluding summary judgment for the defendant.

Regarding subsurface and surface rights, it does not follow that the Rybacheks were not deprived of economically viable use of their property because they allege that the permit restrictions interfered with only their subsurface rights. *See Whitney Benefits, Inc. v. United States,* 18 Cl.Ct. 394, 405 (1989), *aff'd,* 926 F.2d 1169 (Fed.Cir.1991). Consistent with *Keystone Bituminous Coal Association v. DeBenedictis,* 480 U.S. at 493–502, 107 S.Ct. at 1246–51, this court considers the value of the Rybacheks' parcel as a whole in measuring both the severity of the regulation's impact and interference with reasonable investment-backed expectations. The concern in our case is whether the plaintiffs' right to mine gold could be "exercised *with profit." Id.* at 499, 107 S.Ct. at 1249. The Rybacheks allege facts, sufficient to avoid summary judgment, that their land is not economically useful for anything else other than gold placer mining and that they were prevented from this use.

■ With respect to water rights, the fact that the Rybacheks have not yet been divested of their water rights does not mean that their water rights were not taken. The question is whether the Rybacheks were deprived of economically viable use of their water rights. *See, e.g., Trustees for Alaska v. EPA,* 749 F.2d at 559–60. The Rybacheks allege facts, sufficient to avoid summary judgment, that the regulations interfered with their investment-backed expectations of using their water rights to assist in hydraulic mining.

*Review of the Plaintiffs' Motion for Summary Judgment*

The plaintiffs move for summary judgment claiming that they were deprived of economically viable use of their property because EPA permit limitations prevented the economical mining of their property, their land is not economically useful for anything other than gold placer mining, and the permit limitations interfered with their reasonable investment-backed expectations.

There are genuine issues of material fact in dispute precluding summary judgment for the plaintiffs. The plaintiffs allege facts regarding the use of the land to show that there was more than a mere diminution of the value of the land, but a genuine issue of material fact exists with respect to the value of the land and water rights before the alleged interference and the value after the interference. This is a matter that must be resolved by trial. Additionally, this court must inquire whether there are remaining possible uses of the Rybacheks' property that the alleged interfering EPA permit conditions allow. *See, e.g., Loveladies Harbor,* 15 Cl.Ct. at 395. These uses are not limited to commercial uses, but also can include recreational activities. *Hendricks v. United States,* 14 Cl.Ct. at 155. On the present record, this court is unable to conclude as a matter of law that the Rybacheks were deprived of economically viable use of their property.

Applying the three-factor test, viewing the facts in the light most favorable to non-moving defendant, and considering the fact-intensive nature of takings cases, this court finds that there are genuine issues of material fact in dispute so as to preclude summary judgment for the plaintiffs.

## CONCLUSION

For the foregoing reasons, this court grants the defendant's motion to dismiss with respect to paragraphs III and IV of the plaintiffs' amended complaint, denies the defendant's motion to dismiss, or in the alternative, for summary judgment with respect to the takings claim in paragraph V, and denies the plaintiffs' cross-motion for summary judgment.