**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Billy Joe BAGWELL; Cynthia Bagwell, Defendants–Appellants.**

**No. 90–55841.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 6, 1992.

Decided April 21, 1992.

Billy Joe Bagwell, pro se.

Elizabeth Ann Peterson, Peter A. Appell, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before: CANBY, REINHARDT, and WIGGINS, Circuit Judges.

WIGGINS, Circuit Judge:

## OVERVIEW

Billy Joe Bagwell, defendant/appellant, appeals a district court order evicting him from public land and declaring his mining claim invalid. Bagwell argues that he is entitled to possess and reside on the public land under federal mining law. The United States, plaintiff/appellee, asserts that Bagwell's mining claim is invalid due to bad faith and that Bagwell therefore has no right to reside on public land. Bagwell's appeal was timely, and we have jurisdiction under 28 U.S.C. § 1291 (1988). We affirm the district court's order.

## BACKGROUND

Since 1972, Billy Joe Bagwell has resided on 4.25 acres of the Angeles National Forest known as the Dora Day mill site. The mill site contained an abandoned residence and quartz reduction mill when Bagwell moved onto the land, and Bagwell occupies the land pursuant to a mill site claim under federal mining law. In 1979, a fire destroyed the mill and residence, and Bagwell resided off the mill site for the next fifteen months while rebuilding a residence on the site. After the new residence was completed, Bagwell returned to the mill site and rebuilt the mill from salvaged materials.

In the early 1980s, the United States Forest Service became concerned about Bagwell's use of the mill site for purposes other than mining. After a series of disputes with Bagwell over his use of the mill site, the Forest Service eventually drafted an operating plan for Bagwell's mining and milling operations that was executed on July 27, 1984. However, this plan was revoked on October 30, 1985 because Bagwell refused to remove livestock and livestock holding facilities from the mill site and because Bagwell failed to engage in mining or milling activities. The Forest Service ordered Bagwell to vacate the mill site in 1987.

Finally, on August 13, 1989, the United States filed an action in trespass to recover possession of the mill site. At trial, ore samples taken by the Forest Service demonstrated that Bagwell's milling operation could not be operated at a profit. Moreover, the United States produced evidence showing that Bagwell had engaged in very little actual mining or milling activity in his many years on the mill site, that Bagwell had never processed a significant amount of ore at the mill, and that it was extremely unlikely that Bagwell would process ore at the mill in the future. The United States also showed that Bagwell used the mill site primarily for residence and livestock purposes.

By order dated April 27, 1990, the district court held that Bagwell occupied the mill site in bad faith and that any milling activity was simply a fraudulent attempt to pro-

cure public land for a residence. Thus, the district court ordered Bagwell to vacate the mill site, restore the land to its natural state, and pay $5,355 in rent for the use of the land since he was ordered off in 1987. Bagwell, representing himself and his wife, appeals this order.

DISCUSSION

[redacted] The right to possession of public lands for mining purposes under the Mining Law of 1872, 30 U.S.C. §§ 21–42 (1988), is subject to a good faith requirement. *United States v. Nogueira,* 403 F.2d 816, 823–25 (9th Cir.1968); *Bagg v. New Jersey Loan Co.,* 88 Ariz. 182, 354 P.2d 40, 45 (1960). "Good faith is not specified as a location requirement in the mineral location laws themselves. It has been inferred by the courts from the purpose of these laws to further the speedy and orderly development of the mineral resources of the public lands." *Ranchers Exploration & Dev. Co. v. Anaconda Co.,* 248 F.Supp. 708, 729 (D.Utah 1965) (internal quotations omitted).

[redacted] Because the Mining Law of 1872 was enacted to encourage mineral development on the public lands, use of a mining claim for purposes other than mineral development is not protected by federal mining law. "The court-adopted 'good faith' standard helps bridge the gap between [competing] policies by limiting [possession of public lands] to locators interested in exploring for and developing minerals as contemplated by the Mining Law of 1872." 1 *American Law of Mining* § 31.08, at 31–23 (ed. Rocky Mountain Mineral Law Foundation rel. Dec. 1984).

[redacted] As the district court recognized, the United States has the burden of proving bad faith by clear and convincing evidence. *See United States v. Prowell,* 52 IBLA 256, 259 (1981) ("to support a finding of bad faith the evidence must be substantial and clear"). Bagwell's primary arguments on appeal are that the district court lacked jurisdiction to determine the validity of his mill site claim and that the district court's findings were erroneous. Whether federal courts have jurisdiction to determine the validity of mining claims in an action by the United States to recover possession of public lands is an issue of law we review de novo. *Kruso v. International Tel. & Tel. Corp.,* 872 F.2d 1416, 1421 (9th Cir.1989) (subject matter jurisdiction is a question of law and reviewed de novo), *cert. denied,* 496 U.S. 937, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). We review the district court's findings on the issue of bad faith for clear error. *Id.;* Fed.R.Civ.P. 52(a).

*A. Jurisdiction*

Bagwell's first argument is that the district court lacked jurisdiction to rule on the validity of Bagwell's mill site claim because the Department of the Interior has primary jurisdiction to determine the validity of mining claims. We reject this contention.

[redacted] As *Nogueira* makes clear, federal courts have jurisdiction to determine whether possession of a mining claim is in good faith when the United States brings an action to recover possession of public lands. *Id.* at 823–25. "[T]he courts are always open to the United States to vindicate its possessory rights in public land." *Id.* at 824 (citing *Kennedy v. United States,* 119 F.2d 564, 565 (9th Cir.1941) and *United States v. Schultz,* 31 F.2d 764 (N.D.Cal.1929)). Indeed, the primary authority cited by Bagwell recognizes that bringing an action in the district court is "an appropriate way of obtaining immediate possession." *Best v. Humboldt Placer Mining Co.,* 371 U.S. 334, 340, 83 S.Ct. 379, 384, 9 L.Ed.2d 350 (1963). The invalidation of Bagwell's claim was ancillary to the district court's well established authority to end the bad faith possession of public lands.

[redacted] If Bagwell was not occupying the public land but instead simply held a claim to the mill site, the United States would be required to "wait until the administrative agency that has special competence in the field has ruled on [the claim]" before clearing the land of the claim. *Best,* 371 U.S. at 338, 83 S.Ct. at 383. We agree with Bagwell that, with regard to claims where the claimant has not taken possession of the land, the Department of the Interior has

primary jurisdiction to determine the validity of mining claims on public lands. *See Foremost Int'l Tours v. Qantas Airways,* 525 F.2d 281, 286–87 (9th Cir.1975) (quoting 3 K. Davis, *Administrative Law Treatise* § 19.09, at 53 (1958), discussing the "primary jurisdiction rule" from *Best*), *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1976); *United States v. Haskins,* 505 F.2d 246, 253 (9th Cir.1974) ("reference of the [validity] question to the Department of the Interior is the proper course"); *Mach–Tronics, Inc. v. Zirpoli,* 316 F.2d 820, 834 (9th Cir.1963) ("administrative determination should precede adjudication in the courts").

The Department of the Interior has been granted plenary authority over the administration of public lands, including mineral lands. It is that agency which has been entrusted with the function of making the initial determination as to the validity of claims against such lands, such determination being subject to judicial review.

*Adams v. United States,* 318 F.2d 861, 866 (9th Cir.1963) (citing *Best*); *see also Boesche v. Udall,* 373 U.S. 472, 477 n. 6, 83 S.Ct. 1373, 1376 n. 6, 10 L.Ed.2d 491 (1963) (citing 43 U.S.C. §§ 2, 1201).

■ However, Bagwell did not simply hold a claim to the mill site. Bagwell had entered into exclusive physical possession of the mill site and was using the site as a residence. The United States therefore brought an action to recover possession of the public land. Possession of public lands in bad faith for purposes not reasonably related to mining need not be tolerated until all of the claims at issue have been declared invalid in administrative proceedings. *Nogueira,* 403 F.2d at 823–25; *United States v. Russell,* 578 F.2d 806, 807–08 (9th Cir.1978). Instead, the United States may bring an action to recover possession of the public land in the district court.

Physical possession of public lands in bad faith is a different and more pressing problem than mere invalid claims. Physical possession of public lands limits the public's use and enjoyment of such lands, while a mere claim without physical possession does not have any tangible impact on surface resources. In this case, the United States brought an action to eject Bagwell from the mill site because the Bagwells had burdened a national forest with a residence, livestock, and livestock holding pens. If in bad faith, such physical possession warrants an immediate remedy. *See Nogueira,* 403 F.2d at 824 (district court remedy is necessary to prevent the government from being "kept out of possession of its property").

Moreover, as *Nogueira* point out, special expertise is not usually necessary to find that physical possession is in bad faith. 403 F.2d at 823 ("a court could adequately determine the question of good faith"). Because Bagwell is in physical possession of the land and has been using the land for almost twenty years, there is ample evidence concerning Bagwell's use of the land and his intent to develop mining operations. The court is not required to rely exclusively on a complex valuation of the claim, as when the Department of the Interior's mining engineers determine the validity of a dormant claim.

■ In sum, if the United States determines that the possession of a mining claim is in bad faith, it may choose to bring an action in federal court to recover possession of the public land without first adjudicating the validity of the claim in administrative proceedings. We are well aware that the court's finding on good faith usually determines the validity of a claim as well because good faith is a necessary element of a valid claim. Indeed, the district court's findings in this case were dispositive of Bagwell's mill site claim. Such a determination of validity is not violative of primary jurisdiction but is incident or ancillary to the federal court's jurisdiction to vindicate the United States' possessory interest in public lands.[1]

---

**1.** Bagwell also argues that it is a violation of due process and fundamental fairness to allow the United States to proceed in the district court to recover possession of the mill site and in administrative proceedings to clear Bagwell's other mining claims from the public lands. Bagwell

## B. Bagwell's Bad Faith

Under the Mining Law of 1872, an individual may acquire a valid mill site claim "[w]here nonmineral land ... is used or occupied by the proprietor ... for mining or milling purposes...." 30 U.S.C. § 42(a) (1988). Like all mining claims, the use or occupancy of a mill site must be in good faith. *Nogueira,* 403 F.2d at 823. Thus, the United States may evict mill site claimants if the use of the mill site is only nominal and in bad faith or if "improvements or other indications of occupancy do not indicate a good faith intent to develop a mining operation." 1 *American Law of Mining* § 32.06[6], at 32–67 (rel. Oct. 1987).

In examining Bagwell's good faith, the relevant factors can be divided into two primary inquiries. First, the court must determine the extent to which the mill site is being used for purposes other than mining. *See Nogueira, supra.* The court should consider (1) whether the mill site is being used for residence, recreational, or other non-mining purposes, (2) the extent to which the land is valuable to the claimant for uses other than mining, (3) the amount of ore that has been processed or is currently being processed by the mill, (4) significant periods of nonuse for milling purposes, and (5) activity or improvements indicating a good faith intent to undertake milling in the immediate future. *See generally* 1 *American Law of Mining* §§ 31.-08, 32.06[6].

Second, the court must determine whether a reasonably prudent person would be justified in continuing to expend money and labor developing the mill site. *Best,* 371 U.S. at 335–36, 83 S.Ct. at 381–82. Under this second inquiry, the court should consider (1) the length of time the mill site has not been used, (2) the condition of the mill, (3) the potential sources of ore to run through the mill, (4) the market for the processed ore, and (5) the operating costs.

1 *American Law of Mining* § 32.06[6], at 32–68. If there is clear and convincing evidence of bad faith under either of these two inquiries, a claimant may be evicted from the mill site and the claim declared invalid.

The district court's findings in its well reasoned memorandum of decision are sufficient under either prong of the good faith test. Bagwell has used the mill site as a residence since 1972, and yet he has failed to process a significant amount of ore. As the district court noted, "The uncontroverted evidence of ... prolonged inactivity with regard to operation of the mill is persuasive." At trial, a forest service employee testified that Bagwell had told him that "he [Bagwell] could live in the mountains for free" by simply doing a nominal amount of assessment work each year. Moreover, Bagwell's operating plan under 36 C.F.R. section 228.4 was cancelled for failure to engage in mining activities and failure to remove livestock prohibited by the plan. Thus, it appears that the land is valuable to Bagwell primarily for residence and livestock purposes rather than mining or milling purposes. In short, there is clear and convincing evidence supporting the district court's conclusion that "any mining [or milling] activities conducted by the Bagwells were disingenuous attempts to justify their residing with their family on the land," and the findings under this first prong are sufficient to establish Bagwell's bad faith.

However, the district court also engaged in a thorough analysis under the second prong of the good faith test and determined that a reasonably prudent person would not expend further effort to develop a milling operation on the site. In addressing the Bagwell's arguments that the mill was an independent mill used to process the ore of others, the district court found that (1) although the mill had been used in recent times, such use was minimal and

cites no authority for this proposition and offers no basis for a conclusion that he was prejudiced by the parallel proceedings. At bottom, Bagwell's argument is simply that the issue of good faith should have been litigated in administrative proceedings rather than in district court.

As discussed above, a federal court may exercise jurisdiction over an action by the United States to recover possession of public land. Bagwell received notice and a hearing before any of his claims were affected, and we find no violation of due process.

sporadic, (2) the mill has not been commercially active since Bagwell began occupying the site, (3) the mill is crudely constructed and often in disrepair, (4) there is no evidence that any miner has ever brought ore to the mill, (5) there is no evidence that the miners who allegedly intend to bring ore to mill actually have an active mining operation that produces ore, and (6) the cost of mining and then processing the ore at the mill exceeds the market value of the known ore in the immediate area.

In addressing Bagwell's arguments that the mill was a dependent mill used to process the ore from Bagwell's own mining claims, the court found that "the government has clearly and convincingly established the limited potential amount of ore, its low grade, the inefficiency of the mill, and the relatively high cost of mining and milling the ore." The district court's findings are well supported by the evidence, and we find no error. A reasonably prudent miner would not continue to develop and operate the mill site under such conditions. The only objective reason for Bagwell to continue his minimal and unprofitable milling operations is to occupy the public land for residence purposes.

Bagwell argues that the court failed to consider valid lode claims owned by the Bagwells or others within a five mile radius of the mill that could supply ore to the mill. However, Bagwell offers no evidence that these other claims have ore that could be mined and milled at a profit. Given the strong evidence of bad faith, Bagwell cannot prevail by simply alleging that other claims may have profitable ore.

Bagwell also argues that the district court's findings on the costs of mining and operating the mill are erroneous. Once again, however, Bagwell offers no evidence to overcome the government's strong

showing that the mill was merely a sham and that ore deposits in the area could not be mined and processed at Bagwell's mill for a profit. Thus, we find no error.

We agree with the district court that there is clear and convincing evidence of Bagwell's bad faith. The district court properly ordered Bagwell to vacate the mill site and correctly determined that Bagwell's mill site claim is invalid.[2]

### C. Takings Analysis

Bagwell asserts that evicting him from the mill site and invalidating his claim constitutes a taking of private property for public use without just compensation under the Fifth Amendment. It is well established that a mining claim is a form of property protected by the Fifth Amendment. *Best*, 371 U.S. at 335–38, 83 S.Ct. at 381–83; *United States v. Locke*, 471 U.S. 84, 107, 105 S.Ct. 1785, 1799, 85 L.Ed.2d 64 (1985); *Freese v. United States*, 639 F.2d 754, 757, 226 Ct.Cl. 252, *cert. denied*, 454 U.S. 827, 102 S.Ct. 119, 70 L.Ed.2d 103 (1981); *Rybachek v. United States*, 23 Cl. Ct. 222 (1991) (patented and unpatented mining claims cannot be taken for public use without just compensation). Thus, we agree with Bagwell that "uncompensated divestment" of a valid unpatented mining claim would violate the Constitution. *Freese*, 639 F.2d at 757. However, the Fifth Amendment does not require compensation to be paid for divestment of an invalid mining claim. *Skaw v. United States*, 13 Cl.Ct. 7 (1987), *aff'd*, 847 F.2d 842 (Fed. Cir.), *cert. denied*, 488 U.S. 854, 109 S.Ct. 141, 102 L.Ed.2d 113 (1988). Because Bagwell's mill site claim is invalid under the doctrine of bad faith, he is not entitled to compensation under the Fifth Amendment.

2. The district court also determined that Bagwell had violated the mining law by using an unpatented mining claim for "purposes other than prospecting, mining or processing operations and uses reasonably incident thereto." 30 U.S.C. § 612(a) (1988). On appeal, the United States argues that a violation of section 612(a) constitutes bad faith in the operation of a mill site. Like the district court, we refuse to bootstrap a violation of section 612 into bad faith.

There are numerous ways that a miner could violate section 612 while still holding and working a mining claim in good faith. Violations of section 612 are not necessarily a result of bad faith. As the district court noted, "There is simply no authority for such a proposition." Without a finding of bad faith, the remedy for a violation of section 612 is an injunction prohibiting the non-mining use of the land, not invalidation of the claim.

## CONCLUSION

The district court had jurisdiction in this case to determine that Bagwell's mill site claim was invalid. The district court correctly applied the good faith doctrine to Bagwell's claim and determined that Bagwell's claim was invalid, and we can find no error. The district court's finding of bad faith is well supported by the evidence. Thus, we AFFIRM the district court's order.

AFFIRMED.